**Dissenting Opinion issued December 22, 2016**



In The

# Court of Appeals

For The

# First District of Texas

————————————

### NO. 01-15-00044-CV

————————————

**TANYA L. MCCABE TRUST, MCCABE FAMILY TRUST, AND THE ROCHFORD LIVING TRUST, Appellants**

**V.**

**RANGER ENERGY LLC, Appellee**

---

**On Appeal from the 356th District Court**
**Hardin County, Texas**
**Trial Court Case No. 54138**

---

### DISSENTING OPINION

This is an important suit that affects the development of Texas law governing

the enforceability of correction deeds against oil and gas overriding royalty interest

owners. I strongly disagree with the majority's holding that a correction deed of trust was invalid and that the royalty owners' interests in the property survive foreclosure. Accordingly, I respectfully dissent.

This is a suit brought by appellee, Ranger Energy LLC ("Ranger"), against appellants, Tanya L. McCabe Trust, McCabe Family Trust, and Rochford Living Trust (collectively, "the Trusts"), to quiet title to overriding royalty interests in two oil-and-gas leases, the "McShane Fee and Brice Leases," located in Hardin County, Texas, that Ranger acquired at a foreclosure auction. The question before the trial court on cross motions for summary judgment was whether a corrected mortgage and deed of trust complied with provisions in the Texas Property Code relating to correction instruments. *See* TEX. PROP. CODE ANN. §§ 5.027–.031 (West 2014). The Trusts contend that the correction instruments at issue in this case failed to comply with the statutory requirements for making a material correction to an instrument and are therefore invalid as a matter of law. The majority agrees with the Trusts, stating, "The correction instruments were ineffective because they purported to make material changes, yet they were not correctly executed as specified by the Texas Property Code." Slip Op. at 3. I strongly disagree.

The leases at issue here—the McShane Fee and Brice Leases—were part of a package of eight oil and gas leases referred to as the "Saratoga Leases," sold by Tomco Energy, PLC ("Tomco") to Mark III Energy Holdings, LLC ("Mark III") in

2

August 2008. But these two particular leases were inadvertently omitted from the legal description of the Saratoga Leases set out in Exhibit A to the 2008 Original Assignment, Mortgage, and Deed of Trust.

The Trusts purchased their overriding royalty interests in the Saratoga Leases in 2011 and 2012. In 2011, Exhibit A was corrected with respect to the original assignment and the assignments of overriding royalty interests to each of the Trusts, and the corrected instruments were filed in the public records of Hardin County. All but the first overriding royalty interest purchased by the Trusts had the correct Exhibit A attached, and the one purchased with an incorrect Exhibit A was corrected effective one month later. In other words, the Trusts knew from the time they purchased their overriding royalty interests in the Saratoga Leases in 2011 and 2012 that they had purchased property interests in all eight of the Saratoga Leases.

Subsequently, in December 2012, the Original Mortgage and Deed of Trust were renewed with the original incorrect Exhibit A attached that omitted the McShane Fee and Brice Leases from the legal description of the Saratoga Leases. The mistake was promptly discovered, however, and, in January 2013, correction instruments were filed in the Hardin County public records. These instruments amended the Renewal Mortgage and Deed of Trust to reflect that the McShane Fee and Brice Leases were part of the Saratoga Leases, as shown in the 2011 Corrected

3

Original Assignment and the assignments to the Trusts already on file in the Hardin County public records.

Under these circumstances, I cannot agree with the majority that the 2013 correction of Exhibit A to the renewal mortgage and deed of trust was a material change made at that time to the original conveyance instruments. I would hold, instead, that it was a valid *nonmaterial* change made to correct the legal description of the Saratoga Leases in Exhibit A to the Renewal Mortgage and Deed of Trust so that they conformed to the previously Corrected Original Assignment on file in the Hardin County public records since 2011. I would conclude that Ranger's predecessor in title complied with the statutory provisions for making nonmaterial changes to correction instruments.

Property Code section 5.030 provides that a correction instrument is subject only to the property interests of a creditor or bona fide purchaser without notice of an error in the original instrument. Under the circumstances of this case, I would conclude that the Trusts could not and did not establish that they were bona fide purchasers of the overriding royalty interests in the McShane Fee and Brice Leases without notice at the time they acquired their interests in 2011 that their overriding royalty interests extended to all eight of the Saratoga Leases burdened with the Original Mortgage and Deed of Trust. As a result, I would hold that the trial court correctly determined that the foreclosure sale of the Saratoga Leases to Ranger

4

extinguished the Trusts' interests in the McShane Fee and Brice Leases together with their interests in the remaining six Saratoga Leases. I would affirm the judgment of the trial court granting summary judgment in favor of Ranger.

**Facts**

In August 2008, Tomco sold eight oil-and-gas leases, "the Saratoga Leases," in Hardin County, Texas, to Mark III. The Saratoga Leases were described in Exhibit A to the assignment and bill of sale ("the 2008 Tomco Original Assignment"). However, two of the eight Saratoga Leases—the McShane Fee and Brice Leases—were inadvertently omitted from Exhibit A. The 2008 Tomco Original Assignment was recorded in the official public records of Hardin County.

On October 21, 2008, in preparation for closing the $4 million Security Agreement between Mark III and Peoples Bank, attorney Keith C. Thompson issued an opinion letter (the "2008 Opinion Letter"). It stated, inter alia, that Thompson had "[p]repared and obtained signatures for the Assignment of the Saratoga Lease from Tomco Energy, PLC to Mark III Energy Holdings, LLC," along with other leases, and that he had recorded all of the described documents in the appropriate counties. Thompson gave his opinion that the transactions were completed using regularly accepted standards in the Texas oil and gas industry and that they were "such that People's Bank, Kansas has a valid and legally enforceable security interest in the [Saratoga Leases]."

5

On November 3, 2008, Mark III obtained a $4 million mortgage from Peoples Bank (the "Original Mortgage") and executed a deed of trust securing the mortgage (the "Original Deed of Trust").[1]  The Original Mortgage and Deed of Trust granted to Peoples Bank a lien against Mark III's undivided working interests in the Saratoga Leases.  The Original Mortgage and Original Deed of Trust were recorded in the official public records of Hardin County on November 10, 2008.  But, like the 2008 Tomco Original Assignment, the Original Deed of Trust identified the subject leases in an Exhibit A that included only six of the eight Saratoga Leases, again inadvertently omitting the McShane Fee and Brice Leases.  Neither Mark III nor Peoples Bank discovered the error at this time.

On May 3, 2011, Mark III executed an assignment, effective July 1, 2011, of a 10% undivided overriding royalty interest in "the oil, gas and mineral leases in Hardin County, Texas described on Exhibit 'A'" to the Tanya L. McCabe Trust ("Tanya L. McCabe Assignment No. 1").  Exhibit A to this assignment omitted the McShane Fee and Brice Leases, as had the 2008 Tomco Original Assignment and the Original Mortgage and Deed of Trust.  The Tanya L. McCabe Assignment No. 1 was filed on May 26, 2011, in the official public records of Hardin County.

---

[1]  The transactions between Peoples Bank and Mark III also involved other oil-and-gas leases in Hardin and Liberty Counties that are not at issue in this appeal.

On July 25, 2011, Mark III executed an assignment of a 5% undivided overriding royalty interest in "the oil, gas and mineral leases in Hardin County, Texas described on Exhibit 'A'" to the Tanya L. McCabe Trust (the "Tanya L. McCabe Assignment No. 2"). The assignment had an effective date of August 1, 2011. The correct Exhibit A, including the McShane Fee and Brice Leases, was attached to the Tanya L. McCabe Assignment No. 2.

At some point, Mark III discovered the omission of the McShane Fee and Brice Leases. Although the Tanya L. McCabe Assignment No. 2 had the correct Exhibit A, Mark III nevertheless executed a "Corrected Tanya L. McCabe Assignment No. 2" on November 1, 2011, to be effective August 1, 2011. The Exhibit A attached to this document again included the McShane Fee and Brice Leases. Mark III also corrected the first assignment to the Tanya L. McCabe Trust by executing a "Corrected Assignment of Overriding Royalty Interest" that "supersede[d] the Assignment of Overriding Royalty Interests recorded in Instrument No. 2011-20342" in the Hardin County Public Records (the "Corrected Tanya L. McCabe Assignment No. 1") on November 30, 2011, to be effective August 1, 2011. The Corrected Tanya L. McCabe Assignment No. 1 attached the corrected Exhibit A that included the McShane Fee and Brice Leases. Both of these corrected assignments were filed in the Hardin County Public Records on December 22, 2011.

On November 1, 2011, Mark III executed an assignment of a 15% undivided overriding royalty interest in "the oil, gas and mineral leases in Hardin County, Texas described on Exhibit 'A'" to the Tanya L. McCabe Trust (the "Tanya L. McCabe Assignment No. 3"). The Exhibit A attached to this document included the McShane Fee and Brice Leases. The Tanya L. McCabe Assignment No. 3 was also filed in the Hardin County Public Records on December 22, 2011.

On or about December 13, 2011, Tomco executed and filed a Corrected Assignment and Bill of Sale (the "2011 Corrected Tomco Original Assignment") which added the two omitted McShane Fee and Brice Leases to the August 2008 Tomco Original Assignment, clarifying that the August 2008 transaction transferred all eight Saratoga Leases from Tomco to Mark III. Mark III and Peoples Bank did not execute a corrected mortgage or deed of trust at this time.

The parties do not dispute the validity of the 2011 Corrected Tomco Original Assignment conveying the Saratoga Leases to Mark III. Nor do they dispute the validity of the 2011 Corrected Tanya L. McCabe Trust Assignments, all of which were filed by Mark III in the Hardin County Public Records by December 2011.

On April 1, 2012, Mark III executed an assignment of a 2.5% undivided overriding royalty interest in "the oil, gas and mineral leases in Hardin County, Texas described on Exhibit 'A'" to the McCabe Family Trust (the "McCabe Family Trust Assignment"). The Exhibit A attached to this document again included the

8

McShane Fee and Brice Leases. The McCabe Family Trust Assignment was filed in the Hardin County Public Records on May 18, 2012.

Likewise on April 1, 2012, Mark III executed an assignment of a 2.5% undivided overriding royalty interest in "the oil, gas and mineral leases in Hardin County, Texas described on Exhibit 'A'" to the Rochford Living Trust (the "Rochford Living Trust Assignment"). The Exhibit A attached to this document included the McShane Fee and Brice Leases. The Rochford Living Trust Assignment was also filed in the Hardin County Public Records on May 18, 2012.

Mark III fell behind in its mortgage payments, and, in 2012, Peoples Bank filed a lawsuit to collect the debt. At that time, however, Steward Energy Fund LLC also claimed a lien on some of the leases that secured the loans to Mark III from Peoples Bank. On December 6, 2012, Peoples Bank, Mark III, and other parties, including Steward, entered into a settlement agreement (the "2012 Settlement Agreement"). That agreement provided that Steward would release its lien and, in lieu of foreclosure, Mark III would deed its interest in the Saratoga Leases to Peoples Bank and pay it $750,000. The exhibit identifying the Saratoga Leases omitted the McShane Fee and Brice Leases.

In connection with the 2012 Settlement Agreement, Peoples Bank and Mark III executed a new mortgage on December 6, 2012 (the "Hardin Renewal Mortgage"), which extended the bank's security interest in the Saratoga Leases.

9

Despite having the correct description of the eight leases comprising the Saratoga Leases on file with the Hardin County Public Records in the 2011 Corrected Tomco Original Assignment and each of the five assignments of overriding royalty interests to the Trusts, the Hardin Renewal Mortgage, like the uncorrected Original Mortgage, identified the leases in an attachment, Exhibit A, that omitted the McShane Fee and Brice Leases.

Also as part of the 2012 Settlement Agreement, the same parties executed a "Renewal Deed of Trust." In the Renewal Deed of Trust, Mark III represented that it was renewing and extending the $4 million note it had executed on August 12, 2008, in favor of Peoples Bank. Like the Hardin Renewal Mortgage, the addendum to the Renewal Deed of Trust that identified the leases subject to the mortgage to Peoples Bank, Exhibit A, omitted the McShane Fee and Brice Leases. The Renewal Deed of Trust was recorded in the official public records of Hardin County on December 7, 2012.

About a month after Mark III and Peoples Bank executed the Hardin Renewal Mortgage and the Renewal Deed of Trust, Peoples Bank discovered the mistake: the McShane Fee and Brice Leases had been omitted from Exhibit A to both the Hardin Renewal Mortgage and the Renewal Deed of Trust executed in connection with the 2012 Settlement Agreement. On January 14, 2013, Peoples Bank filed a "Corrected Deed of Trust" in the public records of Hardin County. This document contained a

10

revised first page and the original remaining pages of the Renewal Deed of Trust, including the original signature page signed by Mark III and Peoples Bank that had previously been filed as the signature page of the Renewal Deed of Trust in the official public records of Hardin County on December 7, 2012. This document also contained a correct Exhibit A that listed all eight Saratoga Leases, including the McShane Fee and Brice Leases. The revised first page of the Corrected Deed of Trust listed the same parties as the Renewal Deed of Trust: Mark III and Peoples Bank. It added a paragraph to the bottom of the first page explaining that the document had been refiled to correct the original Exhibit A that listed the properties used as collateral. Peoples Bank notified Mark III of the filing of the Corrected Deed of Trust on January 15, 2013.

On January 23, 2013, after recording the Corrected Deed of Trust, Peoples Bank filed a "Corrected Mortgage" in the official public records of Hardin County. The Corrected Mortgage was corrected in the same manner as the Corrected Deed of Trust. As with the Corrected Deed of Trust, the Corrected Mortgage included a revised first page that identified Mark III as the mortgagor and Peoples Bank as the mortgagee, plus the original remaining pages of the Original Mortgage, including the original signature page executed by Mark III and Peoples Bank for the Original Mortgage, and a corrected Exhibit A that listed all eight of the Saratoga Leases, including the McShane Fee and Brice Leases. As with the Corrected Deed of Trust,

the revised first page of the Corrected Mortgage stated that the Original Mortgage was being refiled to correct the Exhibit A that listed the property used as collateral, and the corrected Exhibit A showed all eight Saratoga Leases. On January 23, 2013, Peoples Bank notified Mark III of the filing of the Corrected Mortgage.

Two months later, on March 4, 2013, Peoples Bank and Mark III entered into a second written settlement agreement (the "Second Settlement Agreement"), which provided that Peoples Bank had the right to foreclose on the lien created by the Corrected Mortgage and renewed by the Corrected Deed of Trust against all eight of the Saratoga Leases, including the McShane Fee and Brice Leases. In return, Peoples Bank agreed to pay a third-party lienholder $150,000 to obtain release of the third-party's lien against the McShane Fee and Brice Leases.

On March 5, 2013, Peoples Bank foreclosed on the lien created by the Corrected Mortgage, and it sold the Saratoga Leases to Ranger.

In May 2013, Ranger filed this declaratory judgment action and suit to quiet title against the Trusts. Ranger asserted that because it had obtained the leases by foreclosure sale, the Trusts' overriding royalty interests had been extinguished. The Trusts disagreed. They argued that the Corrected Mortgage and the Corrected Deed of Trust were invalid, and therefore the foreclosure affected only the six leases listed in the original, uncorrected Hardin Renewal Mortgage, excluding the McShane Fee

and Brice Leases. The Trusts argued that they retained their overriding royalty interests in the McShane Fee and Brice Leases free and clear of any mortgage.

On May 8, 2014, Ranger and the Trusts executed a Rule 11 and Stipulation of Facts Agreement ("the Rule 11 Agreement"). The parties stipulated that the 2008 Tomco Original Assignment inadvertently omitted the McShane Fee and Brice Leases from the Saratoga Leases that Tomco conveyed to Mark III. The parties also stipulated that the McShane Fee and Brice Leases were inadvertently omitted from the Original Mortgage and the Renewal Deed of Trust as well. The Rule 11 Agreement also contained stipulations relating to the filing of the Corrected Mortgage and Corrected Deed of Trust by Peoples Bank. The parties stipulated that the Corrected Mortgage and Corrected Deed of Trust included the inadvertently omitted McShane Fee and Brice Leases and that Peoples Bank prepared the correction instruments by revising the first page of the instruments to acknowledge the correction being made, using the remaining pages from the original instruments, and revising Exhibit A describing the Saratoga Leases. Attorneys for both Ranger and the Trusts signed the Rule 11 Agreement on May 8, 2014, and the parties filed the Rule 11 Agreement with the trial court on May 12, 2014.

Both parties subsequently moved for summary judgment. As summary judgment evidence, Ranger filed the affidavit of Mark Watts, an officer of both Ranger and Peoples Bank, explaining the history of all relevant transactions. The

13

affidavit attached the 2008 Opinion Letter, which stated that the entire "Saratoga Lease" was subject to the Security Agreement between Mark III and Peoples Bank. The affidavit also stated that in December 2011, Mark III "had corrected the mistake concerning the McShane Fee and Brice Leases with regard to every transaction except as to the Hardin mortgages it had executed in 2008 in favor of Peoples." Ranger's summary judgment evidence also included the deposition of Stanley McCabe, the trustee of the McCabe Family Trust. McCabe testified that he did not perform any due diligence prior to purchasing the overriding royalty interests in the Saratoga Leases. He did not check the property records, and Mark III did not inform him that Peoples Bank had a lien on the Saratoga Leases. Ranger also attached the deposition of Lloyd Rochford, a trustee of the Rochford Living Trust, and Rochford also testified that he did not perform a title examination or inquire about whether there were any outstanding liens on the Saratoga Leases before purchasing an overriding royalty interest.

On October 26, 2014, the trial court denied the Trusts' motion for summary judgment, granted summary judgment in favor of Ranger, and issued a final declaratory judgment that the Trusts' overriding royalty interests were void and extinguished. The Trusts appealed. The majority reverses, enters judgment in favor of the Trusts, and remands the case. I would affirm.

14

## Validity of Correction Instruments

### A. *Applicable Statutes*

The Texas Property Code provides for the correction of recorded instruments that transfer real property or an interest in real property. *See* TEX. PROP. CODE ANN. § 5.027(a) (West 2014). Section 5.027(a) provides, in relevant part:

> A correction instrument that complies with Section 5.028 or 5.029 may correct an ambiguity or error in a recorded original instrument of conveyance to transfer real property or an interest in real property, including an ambiguity or error that relates to the description of or extent of the interest conveyed.

*Id*. The Property Code permits parties to make both nonmaterial and material changes to instruments of conveyance.

Section 5.028 governs nonmaterial corrections to instruments of conveyance and provides:

> (a)    A person who has personal knowledge of facts relevant to the correction of a recorded original instrument of conveyance may prepare or execute a correction instrument to make a nonmaterial change that results from a clerical error . . . .
>
> . . . .
>
> (a-1)  A person who has personal knowledge of facts relevant to the correction of a recorded original instrument of conveyance may prepare or execute a correction instrument to *make a nonmaterial change that results from an inadvertent error*, including the addition, correction, or clarification of:
>
> > (1)    *a legal description prepared in connection with the preparation of the original instrument but inadvertently omitted from the original instrument*;
> >
> > . . . .

15

(b) A person who executes a correction instrument under this section may execute a correction instrument that provides an acknowledgement or authentication that is required and was not included in the recorded original instrument of conveyance.

(c) A person who executes a correction instrument under this section shall disclose in the instrument the basis for the person's personal knowledge of the facts relevant to the correction of the recorded original instrument of conveyance.

(d) A person who executes a correction instrument under this section shall:

(1) record the instrument and evidence of notice as provided by Subdivision (2), if applicable, in each county in which the original instrument of conveyance being corrected is recorded; and

(2) if the correction instrument is not signed by each party to the recorded original instrument, send a copy of the correction instrument and notice by first class mail, e-mail, or other reasonable means to each party to the original instrument of conveyance and, if applicable, a party's heirs, successors, or assigns.

*Id.* § 5.028 (West 2014) (emphasis added).

Section 5.029, governing *material* changes to instruments of conveyance, provides, in relevant part:

(a) In addition to nonmaterial corrections, including the corrections described by Section 5.028, the parties to the original transaction or the parties' heirs, successors, or assigns, as applicable may execute a correction instrument to *make a material correction* to the recorded original instrument of conveyance, including a correction to:

(1) add:

16

> (A) a buyer's disclaimer of an interest in the real property that is the subject of the original instrument of conveyance;
>
> (B) a mortgagee's consent or subordination to a recorded document executed by the mortgagee or an heir, successor, or assign of the mortgagee; or
>
> (C) land to a conveyance that correctly conveys other land[.]
>
> . . . .
>
> (b) A correction instrument under this section must be:
>
> (1) executed by each party to the recorded original instrument of conveyance the correction instrument is executed to correct or, if applicable, a party's heirs, successors, or assigns; and
>
> (2) recorded in each county in which the original instrument of conveyance that is being corrected is recorded.

*Id.* § 5.029 (West 2014) (emphasis added).

Finally, section 5.030, which governs the effect of a correction instrument against a challenge by another party claiming an interest in the property, provides:

> (a) A correction instrument that complies with Section 5.028 or 5.029 is:
>
> (1) effective as of the effective date of the recorded original instrument of conveyance;
>
> (2) prima facie evidence of the facts stated in the correction instrument;
>
> (3) presumed to be true;
>
> (4) subject to rebuttal; and

(5) notice to a subsequent buyer of the facts stated in the correction instrument.

(b) *A correction instrument replaces and is a substitute for the original instrument.* Except as provided by Subsection (c), a bona fide purchaser of property that is subject to a correction instrument may rely on the instrument against any person making an adverse or inconsistent claim.

(c) *A correction instrument is subject to the property interest of* a creditor or a *subsequent purchaser for valuable consideration without notice* acquired on or after the date the original instrument was acknowledged, sworn to, or proved and filed for record as required by law and before the correction instrument has been acknowledged, sworn to, or proved and filed for record as required by law.

*Id.* § 5.030 (West 2014) (emphasis added).

## B. Whether the Corrected Mortgage and Deed of Trust Complied with Statutory Requirements

The Trusts contend that the corrected instruments of conveyance did not comply with the Texas correction statutes; therefore, they "could not serve to correct the original instruments of conveyance which omitted all mention of two oil and gas leases, and thereby prevented [Ranger] from extinguishing by foreclosure [the Trusts'] right in such omitted leases." The Trusts acknowledge that "due to an inadvertent error, two of the Saratoga Leases intended to be included in the Tomco Original Assignment were inadvertently omitted from Exhibit A thereto, which listed only six of the eight Saratoga leases intended to be subject to the Tomco Assignment," specifically the McShane Fee Lease and the Brice Lease on which they base their claims. In the trial court and on appeal, Ranger responds that "[t]he

18

corrected instruments are valid under sections 5.027 through 5.031 of the Texas Property Code (the "Correction Statutes")." And it further argues that the Trusts "are not bona fide purchasers for the purposes of Section 5.030(c) of the Correction Statutes."

### 1. Inadvertent error in a legal description under section 5.028

In my view, section 5.028(a-1), governing *nonmaterial changes* to conveyance instruments, which is relied upon by Ranger, governs this case. The majority instead incorrectly determines that section 5.029, governing *material* changes to conveyance instruments, applies. The difference is decisive.

Section 5.028(a-1) provides that "[a] person who has personal knowledge of facts relevant to the correction of a recorded original instrument of conveyance may prepare or execute a correction instrument to make a nonmaterial change that results from an inadvertent error, including . . . a legal description prepared in connection with the preparation of the original instrument but inadvertently omitted from the original instrument." *Id.* § 5.028(a-1). For a nonmaterial change, the person who executes the correction instrument must disclose in the instrument the basis for the person's knowledge of the facts relevant to the correction. *Id.* § 5.028(c).

Unlike a correction instrument that makes a material correction to an instrument of conveyance, a correction instrument that makes a nonmaterial change need not be executed by each party to the recorded original instrument of

19

conveyance. *Compare id.* § 5.029(b) (governing material corrections to instruments of conveyance), *with id.* § 5.028(d) (governing nonmaterial changes). Specifically, section 5.028 provides that "if the correction instrument is not signed by each party to the recorded original instrument," the parties making the correction must "send a copy of the correction instrument and notice by first class mail, e-mail, or other reasonable means to each party to the original instrument of conveyance and, if applicable, a party's heirs, successors, or assigns." *Id.* § 5.028(d)(2). It must record the instrument and evidence of reasonable notice given as provided in the statute to each party to the original instrument and, if applicable, a party's assigns. *Id.*

The majority notes that the Corrected Mortgage and Deed of Trust added the McShane Fee and Brice Leases to Exhibit A, which described the Saratoga Leases, and it states that "the revisions purported to add property interests in two leases that previously were not listed." Slip Op. at 24. The majority concludes that the correction instruments "added two leases to a conveyance that correctly conveyed interests in other specifically identified leases," which constitutes a material correction pursuant to section 5.029. Slip Op. at 26. But to say that the two leases were not *listed* in the legal description of the land conveyed is not to say that they were not *conveyed*, and the evidence is undisputed that all eight Saratoga Leases were, in fact, conveyed by Tomco to Mark III in 2008. I disagree, therefore, that the revisions in the Corrected Mortgage and Deed of Trust "add[ed] . . . land to a

20

conveyance that correctly convey[ed] other land." *See* TEX. PROP. CODE ANN. § 5.029(a)(1)(C). Instead, I agree with Ranger that the revisions in the correction instruments added the McShane Fee and Brice Leases to the *legal description* of the Saratoga Leases, the property interest conveyed by Tomco to Mark III in 2008 and mortgaged by Mark III to Peoples Bank in 2008. The "addition, correction, or clarification of . . . a legal description prepared in connection with the preparation of the original instrument but inadvertently omitted from the original instrument" is a nonmaterial correction pursuant to section 5.028(a-1). *See id.* § 5.028(a-1).

The evidence in this case shows that all of the requirements of section 5.028 were met. The Corrected Deed of Trust stated, "This document was originally filed under County Clerk Instrument No. 2-12-33676, Official Public Records of Hardin County, Texas and is being refiled to correct the <u>Exhibit A</u> attached at the time of the original filing." That same Exhibit A had already been corrected with respect to both the 2008 Tomco Original Assignment of the Saratoga Leases to Mark III and the assignments of undivided overriding royalty interests in the Saratoga Leases to the Trusts and filed in the Hardin County public records in 2011. Moreover, both parties stipulated in their Rule 11 Agreement filed in this litigation, "Due to an inadvertent error, two of the Saratoga Leases were omitted from the <u>Exhibit A</u> attached to the Original Tomco Assignment." That same Rule 11 Agreement stated that Tomco executed the 2011 Corrected Tomco Original Assignment, recorded

21

under number 2011-25176 of the official public records of Hardin County, that "corrected the Original Tomco Assignment by adding the two Omitted Saratoga Leases as part of the property being conveyed by this instrument." The parties also agreed in the Rule 11 Agreement that Peoples Bank sent notice of the Corrected Mortgage and Deed of Trust to Mark III shortly after it filed the corrected instruments.

I would hold that all of the requirements of section 5.028 for making a nonmaterial correction to a legal description in a conveyance instrument were satisfied with respect to the Corrected Mortgage and the Corrected Deed of Trust. Therefore, I would hold that the Corrected Mortgage and Corrected Deed of Trust are valid.

### 2. *Bona fide purchasers without notice under section 5.030*

I would also hold that, at the time the Corrected Mortgage and Corrected Deed of Trust were filed, the Trusts were not bona fide purchasers for value of their overriding royalty interests in the McShane Fee and Brice Leases. The Trusts were not without notice that these Leases were two of the eight Saratoga Leases to which their undivided overriding royalty interests applied and which were mortgaged by Mark III to Peoples Bank. Therefore, these correction instruments replaced the uncorrected instruments as to the Trusts and barred their claims in this litigation.

Property Code section 5.030, governing the enforceability of correction instruments against adverse claimants, provides:

> (b) A correction instrument replaces and is a substitute for the original instrument. Except as provided by Subsection (c), a bona fide purchaser of property that is subject to a correction instrument may rely on the instrument against any person making an adverse or inconsistent claim.

> (c) A correction instrument is subject to the property interest of a creditor or a subsequent purchaser for valuable consideration without notice acquired on or after the date the original instrument was acknowledged, sworn to, or proved and filed for record as required by law and before the correction instrument has been acknowledged, sworn to, or proved and filed for record as required by law.

*Id.* § 5.030(b)–(c). Thus, under section 5.030, a correction instrument replaces the original instrument and is subject only to the property interests of creditors or bona fide purchasers for value *without notice of the error* in the original instrument and who acquired their interest on or after the date the original instrument was executed and filed in the public records and before the correction instrument was executed and filed in the public records. *See id.*

The Trusts assert that their property interests in the McShane Fee and Brice Leases were *not* subject to the lien placed on the Saratoga Leases by Peoples Bank, so that their interests were not conveyed to Ranger at the March 5, 2013 foreclosure sale. To prove this, the Trusts had to show that they were bona fide purchasers of their undivided overriding royalty interests in the McShane Fee and Brice Leases

23

"for valuable consideration *without notice* acquired on or after the date the original instrument was acknowledged, sworn to, or proved and filed for record as required by law and before the correction instrument ha[d] been acknowledged, sworn to or proved and filed for record as required by law." *Id.* § 5.030(c). The Trusts thus had to prove that they had no notice that their undivided overriding royalty interests in the McShane Fee and Brice Leases were included in the undivided interests in all eight Saratoga Leases acquired by Mark III from Tomco in the 2008 Tomco Original Assignment and Bill of Sale and made subject to Peoples Bank's 2008 Original Mortgage and Deed of Trust. *See id.*

I would hold that the Trusts did not and cannot show that they were bona fide purchasers for value of their undivided overriding royalty interests in the McShane Fee and Brice Leases without notice before the Corrected Mortgage and Corrected Deed of Trust were executed and filed that their undivided property interests in those two leases were a portion of their undivided property interests in all eight Saratoga Leases conveyed by the 2008 Tomco Original Assignment to Mark III. Nor did the Trusts acquire their interests without knowledge that the working interests in the Saratoga Leases acquired by Mark III in 2008—from which they purchased their interests in 2011 and 2012—were all subject to the 2008 Original Mortgage and Deed of Trust and the Hardin Renewal Mortgage and Renewal Deed of Trust before the Corrected Mortgage and Corrected Deed of Trust were executed and filed.

24

Therefore, the Corrected Mortgage and the Corrected Deed of Trust were both enforceable against the Trusts' interests. *See id.* § 5.030(a)–(c).

Because the Trusts failed to show that the foreclosure sale under the Corrected Mortgage and Deed of Trust foreclosed upon and sold property they owned that was not subject to the Corrected Mortgage and Corrected Deed of Trust—namely that portion of the undivided overriding royalty interests in the Saratoga Leases attributable to the McShane Fee and Brice Leases—I would hold that their interests were extinguished by the foreclosure sale.

## Conclusion

I would affirm the trial court's judgment denying the Trusts' motion for summary judgment and granting summary judgment in favor of Ranger.


Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Massengale, and Lloyd.

Justice Keyes, dissenting.

25